IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Chief Judge Wiley Y. Daniel

Civil Action No. 05-cv-02567-WYD

MICHAEL TREVINO,

    Applicant,

v.

MICHAEL ARELLANO (Warden, Arkansas Valley Correctional Facility),[1] and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

    Respondents.

ORDER OF DISMISSAL

Applicant Michael Trevino is a prisoner in the custody of the Colorado Department of Corrections. Mr. Trevino has filed *pro se* an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the validity of his conviction in Adams County District Court case number 90CR1419. Senior Judge Zita L. Weinshienk previously dismissed this action as barred by the one-year limitation period. The United States Court of Appeals for the Tenth Circuit reversed that decision and remanded the case for further proceedings. The Tenth Circuit's mandate was filed in this Court on April 24, 2007.

In an order filed on June 28, 2007, I directed Respondents to file an answer to the habeas corpus application. On July 13, 2007, Respondents filed their "Answer to

---

[1]Mr. Trevino named the warden of the Fremont Correctional Facility as Respondent in his Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254. Mr. Trevino currently is incarcerated at the Arkansas Valley Correctional Facility. Therefore, the warden of that facility has been substituted as a Respondent for the warden of the Fremont Correctional Facility.

Application for a Writ of Habeas Corpus." On October 4, 2007, I entered an order appointing counsel to represent Mr. Trevino in this action and I directed counsel to file a traverse or other appropriate pleading. On December 10, 2007, I ordered the clerk of the Adams County District Court to produce and transmit to this Court the state court record in Mr. Trevino's state court case. The state court record was received on December 18, 2007. On March 12, 2008, counsel for Mr. Trevino filed a "Combined Traverse and Brief in Support of Application for Writ of Habeas Corpus." After reviewing the entire file, I find that an evidentiary hearing is not necessary. For the reasons stated below, the habeas corpus application will be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mr. Trevino was convicted of one count of aggravated robbery and one count of kidnapping pursuant to a guilty plea entered in state court on October 30, 1992. He was sentenced to a total of fifty-eight years in prison. Mr. Trevino did not file a direct appeal. However, on March 1, 1995, Mr. Trevino filed a postconviction motion pursuant to Rule 35(c) of the Colorado Rules of Criminal Procedure challenging the validity of his guilty plea and conviction. Following a hearing, the trial court denied the Rule 35(c) motion and the Colorado Court of Appeals subsequently affirmed that ruling. **See People v. Trevino**, No. 03CA2143 (Colo. Ct. App. Jan. 20, 2005) (not selected for publication). On May 16, 2005, the Colorado Supreme Court denied Mr. Trevino's petition for writ of certiorari.

Mr. Trevino claims in this action that his guilty plea is invalid because he was not competent when he pled guilty and that counsel was ineffective for failing to raise the

2

competency issue at Mr. Trevino's providency hearing.  Respondents concede that the instant action is timely filed.  *See* 28 U.S.C. § 2244(d).  Respondents also concede that Mr. Trevino has exhausted state court remedies.  Therefore, I will proceed to address the merits of Mr. Trevino's claims.

## II.  STANDARD OF REVIEW

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Mr. Trevino seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision."  *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or

3

> similar factual context, the Supreme Court must have
> expressly extended the legal rule to that context.

***House v. Hatch***, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). ***See id***. at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. ***See Williams***, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." ***Maynard*** [***v. Boone***], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting ***Williams***, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" ***Williams***, 529 U.S. at 405 (citation omitted).
>
> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. ***Id***. at 407-08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

***House***, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. ***See Williams***, 529 U.S. at 409-10. "[A] federal habeas court may not issue the

4

writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id*. at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." **Maynard**, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id*.

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). **See House**, 527 F.3d at 1019. Section 2254(d)(2) allows me to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Mr. Trevino bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" **Miller-El v. Dretke**, 545 U.S. 231, 240 (2005) (quoting **Miller-El v. Cockrell**, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." **Aycox v. Lytle**, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his

5

'independent review' should be distinguished from a full de novo review of the petitioner's claims." ***Id.***

### III. MERITS OF THE CLAIMS

As noted above, Mr. Trevino claims his guilty plea is invalid because he was not competent when he pled guilty and counsel was ineffective for failing to raise the issue at Mr. Trevino's providency hearing. "[T]he conviction of an accused person while he is legally incompetent violates due process." ***Pate v. Robinson***, 383 U.S. 375, 378 (1966); ***see also Godinez v. Moran***, 509 U.S. 389, 396 (1993). The test to determine a defendant's competency to stand trial is "whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding–and whether he has a rational as well as factual understanding of the proceedings against him." ***Dusky v. United States***, 362 U.S. 402, 402 (1960) (per curiam). The same test applies to a defendant who pleads guilty. ***Godinez***, 509 U.S. at 398.

"Competency to stand trial is a factual question." ***Bryson v. Ward***, 187 F.3d 1193, 1201 (10th Cir. 1999). Therefore, the state court's conclusion that Mr. Trevino was competent is a factual determination that is presumed correct unless Mr. Trevino rebuts the presumption of correctness with clear and convincing evidence. ***See*** 28 U.S.C. § 2254(e)(1). Furthermore, I may not issue a writ of habeas corpus unless the state court's competency decision was based on an unreasonable determination of the facts in light of the evidence presented. ***See*** 28 U.S.C. § 2254(d)(2).

Regarding the ineffective assistance of counsel claim, it was clearly established when Mr. Trevino entered his guilty plea that a defendant has a right to effective

6

assistance of counsel.  *See Strickland v. Washington*, 466 U.S. 668 (1984).  To establish that counsel was ineffective, Mr. Trevino must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id*. at 687-88.  "Judicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id*.  It is the defendant's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*

Under the prejudice prong, Mr. Trevino must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.

If Mr. Trevino fails to satisfy either prong of the *Strickland* test, the ineffective assistance of counsel claim must be dismissed.  *See Strickland*, 466 U.S. at 697.  Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

I first will address Mr. Trevino's competency claim.  In order to consider this claim pursuant to § 2254(d)(2), I must review the state court's factual findings regarding Mr. Trevino's competence.  Therefore, I will quote extensively from the trial court's factual findings in that court's oral ruling denying Mr. Trevino's postconviction Rule 35(c) motion.

> On October 22, 1990, the Defendant was charged
> with the offense in question.  On or about June 18 of 1991,

7

Dr. Lee made a determination based on some testing that the Defendant's IQ was approximately 52. In June of 1991, Dr. Olin, after evaluations, determined, opined that the Defendant was incompetent.

On January 23, 1991, in some parallel proceedings that were going on, based upon some offenses which had allegedly been committed in Denver, the Denver District Court held a hearing based upon competency and at that time determined that he, the Defendant, was incompetent.

On August 21, 1991, at a hearing in Adams County, the Court adopted the findings from the Denver District Court that the Defendant was incompetent. Thereafter, on about the 26th of August 1991, Dr. Stewart, who was one of the people who observed the Defendant, made a psychological evaluation of the Defendant, expressed several opinions regarding what he felt were the Defendant's knowledge of proceedings.

And I want to just briefly quote from a couple of those excerpts from that exhibit which was People's Exhibit 20. This is by Dr. Stewart. He said, "On August 19, 1991, he," being the Defendant, spoke with a therapist. The conversation as reported in the chart is, quote, "I asked Michael how many years he's looking at when he goes to jail."

The patient stated, "I'm looking at the," quote, bitch, end quote, "habitual criminal charge, I know more than 40 years, no less than 20 years. My lawyer said that if I can beat the bitch, it will all get dropped. Hell, I'll be over 50 years old when I get out, end quote.

Dr. Stewart said he was aware of charges against him and could add numbers enough to show that if he's 30 years old and spends 20 years in jail, he'll be 50 by the time he gets out.

Dr. Stewart also said, "Additionally, he shows information that supports knowledge of the nature and course of the proceedings against him, participating in his defense and cooperating with counsel. For example, he knew, A, the roles of various participants in the trial such as judges, lawyers," excuse me, "lawyers, judge, jury, B, the

8

court procedure such as trial evidence and that if he went to trial in 20 years the case would be weak.

"He realistically considered legal defenses such as insanity and knew the case against him was strong, knew the charges against him, knew the possible penalties and could participate with therapists in planning treatment strategies, presumably showing he could participate with his attorney in planning legal strategies.

In February of 1992, Dr. Carmel, C-A-R-M-E-L, which is in Exhibit 17, reported that his finding was that the Defendant was competent in mid to late March of 1992, Dr. Sundell, who was someone who had also seen the Defendant, who evaluated the Defendant and was expressing opinions that he believed the Defendant to be competent.

In early February of '92, Dr. Buzan filed his report and found the Defendant competent. In his March 5, 1992 letter, Exhibit 18, Dr. Buzan's letter to Judge Marshall, he again made various findings. And I'll read those in, and just a few excerpts are enlightening as far as what they were finding.

The doctor was asking about being able to work with his attorney, and he had been trying to reach [Mr. Trevino's attorney]. Mr. Trevino said that he would gladly accept an NGRI or NGR-IMC, commitment to CMHIP," quote 'for one day to life,' end quote, "if that was the defense his attorney recommended. He also said he would work with his attorney concerning any plea bargains his attorney could arrange, and options which his attorney presented. I thus have no reason to think he cannot work with counsel.

"In summary, Mr. Trevino appears to have a good grasp of his legal situation, an adequate understanding of the judicial process, and no difficulties cooperating with his attorney.

"While he probably does have some degree of intellectual impairment due to his extensive vapor use, this is not to a degree which would impair his competency."

The doctor went on to say, "However, he has intellectual deficits in the past, and has every reason to try to

9

appear as," quote, 'sick,' as possible. It is thus quite possible that his 'voices' are malingering symptoms. Either way, any psychotic symptoms he has are clearly not of a degree or quality as to impair his competency," and again expressed to the judge his opinion that Mr. Trevino is no longer suffering from a mental disease or defect which renders him incapable of understanding the nature and course of the proceedings against him, or of participating or assisting in his defense, or cooperating with his defense counsel."

At the time of the March 6, 1992, hearing in Denver, a restoration hearing, at that time, the Court found that the Defendant, excuse me, there was a hearing at that time. On March 23, Dr. Sundell made his evaluation that I previously mentioned and on April 10 of 1992, after a hearing, the Defendant was found to have been restored to competency.

On June 19, 1992, in the Adams County, [sic] the Court, after a hearing, adopted the April 10, 1992, findings of Denver that restored the Defendant to competency.

On June 30 of 1992, Dr. Fisher, who had been involved with the Defendant, expressed his opinion that he believed that the Defendant had been malingering. On September 15, 1992, Dr. Olin, who had been the doctor who had initially expressed an opinion that the Defendant was incompetent, based upon his review of various other doctors' opinions, his own personal observations of the Defendant, expressed his opinion that the Defendant was competent.

On September 1, just shortly before that, there was an offer of "not guilty by reason of insanity plea." Subsequently, on October 30, of 1992, the Defendant entered his plea of guilty to the charges I just indicated in Adams County.

The Defendant's expert, Dr. Gunderson in this case, who was retained by the Defendant, came into this case in late 1998. Dr. Gunderson met with and evaluated the Defendant at the Limon Correctional Facility for approximately two hours in August of 1998. She also reviewed a number of the prior reports, many of which I just have referenced. She concludes the Defendant suffered from profound cognitive impairment and that his condition

was unchanged from the time when he had been determined to be incompetent in 1991.

Dr. Gunderson prepared a second report based on a second evaluation of the Defendant in May of 2002. Her report recites on page 2 that Mr. Tom McFarland, who was an investigator, asked her to assess the Defendant's psychological condition and offer an opinion regarding, quote, his current level of competency, end quote, to assist his attorney Ann Sussman.

In her report, based upon her evaluation, she opined that the Defendant was never restored to mental competency and doubted that he would ever be restored to competency.

Turning back to October 30 of 1992, at the time of the plea, the Court at that time had before it the history of the prior adjudications. The various reports had been reviewed by Dr. Olin. The restoration hearing in Denver, as well as the one in Adams County, and at that time had before it numerous, unrefuted reports of the Defendant's restoration to competency.

At that time, there was an absence of any medical report finding the Defendant incompetent. There was a representation made to the Court that there was no evidence of any medical opinion that the Defendant was incompetent.

I would also, I want to go to the pleading, the guilty plea, the Rule 11 proceeding in that case, because we've had quite a bit of testimony here about that. And it seems to me that's really the core of what we're talking about here.

The question is whether or not on that date the Defendant was incompetent. As I said, as noted here, there was a good deal of evidence presented to the Court addressing these events in 1999 and through 2003 where the Defendant had engaged in letter writing or taking classes and his satisfactory completion of those.

The Court finds that these recent events provide little relevant evidence as to the Defendant's competency, a decade earlier at the time of his plea. The Court would note, however, that a good deal of that would tend to refute the

11

> Defendant's contention of present assertions of being
> incompetent, which was the spring board that seemed to
> have been used by Dr. Gunderson because it is without
> controversy that she never saw the Defendant as he
> presented in 1992.
>
> The Court finds that the Defendant's hired
> psychologist, psychiatrist, Dr. Gunderson's evaluations and
> reports and opinions that she gave in 1998 and 2002, some
> six to ten years respectively after the plea, are of little or no
> assistance in determining whether the Defendant was or was
> not competent in October of 1992.
>
> It would also seem that her present opinions or '88
> [sic] and 2002 opinions fly in the face of every medical and
> psychiatric opinion which was being rendered
> contemporaneously with or in advance of the plea in October
> of 1992.

(Trial Tr. vol. 11, pp. 60-67.) The trial court went on to discuss Mr. Trevino's responses to questions from the trial court at the October 1992 providency hearing, including specific questions regarding Mr. Trevino's mental competency. The trial court ultimately concluded as follows:

> Based upon the information before this Court, part of
> which I have read into the record here, the Court finds that at
> the time of the plea of guilty on October 30, 1992, there was
> no evidence, credible or otherwise, that the Defendant was
> incompetent.
>
> All of the reports at that time indicated that the
> Defendant was competent. Reports indicated that he was
> malingering, actively misleading others regarding his
> condition, embellishing the effects of his condition, which
> called into question the earlier determination that his IQ was
> 52, since he was not conducting himself according to anyone
> else who was observing him in a manner which would
> suggest that his IQ was 52.
>
> Many of those things were documented in the doctors'
> reports.

12

> The Court finds that at the time of the plea, the Defendant was competent and the Court properly received the Defendant's guilty plea. I would note that since there was a fair amount made with regard to the Rule 11 advisement in this case, regarding [Mr. Trevino's attorney] reading and reviewing that report with Mr. Trevino, I suspect, and I expect and I suspect that the defense counsel will in fact go through with a defendant, regardless of their level of intelligence or education, go through with them and explain what's on there, simply as a matter to make sure that the People have an opportunity to ask any questions.
>
> The Defendant is not a lawyer. He's not held to the standard of being a lawyer, able to recite each and every element of the offense and verbalize the definition of competence, and the legal distinction between not guilty by reason of insanity and incompetence.
>
> The Court has reviewed the Rule 11 transcript cited and the other documents. The Court is satisfied that the Defendant understood the implications of the plea and its consequences, including the sentence that was to be imposed.

(Trial Tr. vol. 11, pp. 75-77.) The trial court also applied the correct standard from

***Strickland*** and concluded that counsel for Mr. Trevino had not been ineffective. As a result, the trial court denied the Rule 35(c) motion.

On appeal, the Colorado Court of Appeals affirmed the denial of the Rule 35(c) motion. The state appellate court reasoned as follows:

> Here, [the] trial court found that the reports of several medical experts issued near the time defendant entered his guilty plea indicated that he was competent. The court also found that the reports expressed the opinion that the symptoms he displayed indicated malingering or embellishment of his condition. The court considered and rejected the contrary opinion of defendant's expert who testified at the Crim. P. 35(c) hearing. The court did not credit this opinion because the doctor did not examine defendant until several years after the defendant pleaded guilty.

13

> Further, the trial court reviewed the transcripts of the providency and sentencing hearings and found that defendant was able to understand the charges against him, the nature of the offenses, and the possible penalties he faced. The court also found that the providency court specifically inquired as to defendant's competency before it accepted his guilty plea and was assured that defendant understood the proceedings. The trial court further found that the issue of defendant's competency was raised by defense counsel at the sentencing hearing, that the sentencing court found that defendant had been determined to be competent, that nothing had occurred to change such a finding, and that defense counsel had no offer of proof that defendant required further evaluation. Defendant has not provided the transcripts of the providency or sentencing hearing upon which the trial court relied and therefore we presume that those transcripts support the court's findings.
>
> Thus, the trial court's finding that defendant was competent when he pleaded guilty is supported by the record, and we will not disturb it.
>
> And, because the record supports the trial court's finding that defendant was competent when he pleaded guilty, plea counsel's failure to recognize or raise the issue of defendant's incompetency was not ineffective assistance. Additionally, the trial court found that defense counsel attempted, without success, to find a medical professional who would testify at trial that defendant was incompetent. Thus, the trial court did not err in denying defendant's Crim. P. 35(c) motion.

*Trevino*, slip op. at 3-5 (citations omitted).

Mr. Trevino first challenges the state court determination that he was competent when he pled guilty by arguing that the state court's application of ***Dusky*** was unreasonable. Mr. Trevino specifically argues that he was incompetent under the ***Dusky*** standard because he did not have a factual understanding of the charges against him. In support of this argument, Mr. Trevino maintains that the state courts

14

ignored the substantial evidence that he never was able to remember the events leading to his arrest.

I note initially that Mr. Trevino's argument that the state courts unreasonably applied **Dusky** is misplaced because that is the standard in § 2254(d)(1) and "[c]ompetency to stand trial is a factual question," **Bryson**, 187 F.3d at 1201, that must be reviewed pursuant to § 2254(d)(2). However, even considering this argument in the context of § 2254(d)(2), I do not find that the determination by the state courts that Mr. Trevino was competent was based on an unreasonable determination of the facts in light of the evidence presented.

My review of the state court record does not lead me to the conclusion that Mr. Trevino lacked a factual understanding of the charges against him. Mr. Trevino is correct that various medical reports indicate that he reported he was unable to recall the events that led to his arrest. However, the medical evidence showed, as the state trial court specifically found in denying Mr. Trevino's postconviction motion, that "[r]eports indicated that he was malingering, actively misleading others regarding his condition, embellishing the effects of his condition." (Trial Tr. vol. 11, p. 75-76.) Pursuant to § 2254(e)(1), Mr. Trevino must present clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's factual finding regarding the medical evidence. He has not done so.

Mr. Trevino also points to the fact that he did not allocute to the facts of his offense in his own words at his providency hearing in support of his argument that he lacked a factual understanding of the charges against him. However, the fact that Mr.

15

Trevino did not recite the factual basis for the charges against him in his own words does not demonstrate that he lacked a factual understanding of the proceedings against him. Mr. Trevino stated at the providency hearing that he understood the elements of the offenses to which he was pleading guilty, including the factual basis for the crimes charged. (Trial Tr. vol. 6, pp. 5-7.) Mr. Trevino also signed and initialed a plea agreement that acknowledged his understanding of the elements of the charges to which he was pleading guilty and the factual basis for those charges. Furthermore, the trial court made specific findings during the Rule 35(c) hearing indicating that Mr. Trevino understood the factual basis for the charges against him. The court quoted a report from Dr. Stewart that indicated Mr. Trevino "knew the case against him was strong, knew the charges against him." (Trial Tr. vol. 11, p. 62.) The trial court also quoted a report by Dr. Buzan that indicated "Mr. Trevino appears to have a good grasp of his legal situation." (Trial Tr. vol. 11, p. 63.) The trial court specifically concluded that Mr. Trevino "understood the implications of the plea and its consequences." (Trial Tr. vol. 11, p. 77.) Finally, the Colorado Court of Appeals also determined that the trial court's findings, which included a finding that Mr. Trevino understood the nature of the offenses, was supported by the record. *See Trevino*, slip op. at 4.

All of these factual findings are presumed correct pursuant to § 2254(e)(1) and, once again, Mr. Trevino fails to present any clear and convincing evidence to overcome the presumption of correctness. As a result, I find that the state court determination that Mr. Trevino was competent was not based on an unreasonable determination of the facts in light of the evidence presented.

Mr. Trevino next argues the determination by the state courts that he was

competent was an unreasonable determination of the facts in light of the evidence presented because the state courts ignored or undervalued the medical findings regarding Mr. Trevino's dementia; failed to give appropriate weight to Mr. Trevino's IQ score and an MRI that showed large areas of his brain were not functioning; gave too little weight to the testimony of Dr. Gunderson; unreasonably focused on the reports that indicated Mr. Trevino was malingering; and apparently disregarded the testimony of Mr. Trevino's attorney that Mr. Trevino could not have read or understood the plea agreement without substantial assistance from counsel. This argument fails for the simple reason that the evidence Mr. Trevino cites is contradicted by a substantial amount of other evidence that indicated Mr. Trevino was competent. The trial court's findings, quoted in detail above, are presumed correct. Mr. Trevino's dispute with the appropriate weight given to some of that evidence is not clear and convincing evidence that the state court's factual finding of competence was incorrect.

Finally, I agree with the state court of appeals that Mr. Trevino's ineffective assistance of counsel claim is dependent upon the competency claim and must be dismissed because the competency claim lacks merit. Mr. Trevino cannot demonstrate that he suffered any prejudice from counsel's failure to raise the competency issue at Mr. Trevino's providency hearing if Mr. Trevino was, in fact, competent. Because Mr. Trevino fails to overcome the presumption of correctness that attaches to the factual finding that he was competent when he entered his guilty plea on October 30, 1992, his ineffective assistance of counsel claim also fails. Accordingly, it is

ORDERED that the habeas corpus application is **DENIED** and the action is **DISMISSED WITH PREJUDICE**. It is

FURTHER ORDERED that Applicant's Request for Ruling, filed January 20, 2009 [#44] is **DENIED AS MOOT**. It is

FURTHER ORDERED that each party shall bear his own costs and attorney's fees.

Dated: January 23, 2009

BY THE COURT:

s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge